899 So.2d 602 (2005)
Donald SULLIVAN, Jr.
v.
Mark FRANICEVICH and Joshua, Incorporated.
No. 2004-CA-0321.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 2005.
*604 Sean D. Alfortish, Law Offices of Sean D. Alfortish, APLC, Gretna, LA, for Plaintiff/Appellee.
Stephen O. Scandurro, Scandurro & Layrisson, New Orleans, LA, for Defendant/Appellee (Mark Franicevich).
James F. Gasquet, III, Law Office of James F. Gasquet, III, Buras, LA, for Defendant/Appellee (Joshua Incorporated).
Al M. Thompson, Jr., Al M. Thompson, Jr., LLC, New Orleans, LA, for Defendant/Appellant (Essex Insurance Company).
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS Sr.).
PATRICIA RIVET MURRAY, Judge.
Essex Insurance Company ["Essex"] suspensively appeals the judgment awarding plaintiff Donald Sullivan, Jr., damages for injuries he incurred when he was slapped on the back in greeting by defendant Mark Franicevich in a bar owned by Essex's insured, defendant Joshua, Inc. Essex also appeals the trial court's award of attorney fees to defendants, Mr. Franicevich and Joshua, Inc., on account of Essex's failure to defend. In answer to the appeal, Mr. Sullivan argues that the appeal should be dismissed for lack of jurisdiction and alternatively, that the trial court erred by finding any comparative fault on his part. For the reasons that follow, we affirm in part and reverse in part.

APPELLATE JURISDICTION
Mr. Sullivan initially argues that this appeal should be dismissed as premature because at the time it was filed, there was a pending motion for new trial in the district court. The record shows that judgment was rendered in favor of Mr. Sullivan, on July 31, 2003, awarding him damages reduced by fifty percent on account of his comparative fault. The plaintiff timely filed a motion for new trial on August 7, 2003. Defendant Essex filed a motion and order for suspensive appeal, as well as an appeal bond, on September 3, 2003. The motion for new trial was then heard by the trial court on November 18, 2003, and was denied on April 29, 2004.
La. C.C.P. art. 2123(C) provides:
An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions.
The second sentence of this provision, added by Acts 1997, No. 1056, § 1, makes it clear that the trial court's denial of a motion for new trial during the pendency of an appeal cures the defect of prematurity. See also: Oliver v. Oliver, 411 So.2d 596 (La.App. 1st Cir.1982). Therefore, we conclude that this court has jurisdiction over the instant appeal.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Mr. Sullivan, filed suit against Mr. Franicevich, Joshua, Inc., and Essex contending that he suffered a ruptured spleen as a result of Mr. Franicevich having slapped him on the back in greeting while he sat in a bar. This incident occurred on July 23, 1999. At the time, Mr. Franicevich was operating the bar and was president of Joshua, Inc., which owned the bar. Essex refused to provide its insured, Joshua, Inc., with a defense on the *605 grounds that the incident involved an intentional tort, which was excluded from coverage under its policy. Joshua, Inc., therefore, asserted a cross claim against Essex. Prior to trial, Mr. Sullivan settled with Mr. Franicevich and Joshua, Inc. for $10,000. The remaining claim against Essex and the cross claim were tried in a bench trial on November 8, 2002. On July 31, 2003, the trial court found the plaintiff, Mr. Sullivan, to be fifty percent at fault and rendered judgment in favor of him against Essex in the amount of $22,575.62 ($50,000 in general damages, plus $15,151.25 in medical expenses, reduced by fifty percent to represent the plaintiff's comparative fault and then again by $10,000, the amount the plaintiff had received in settlement). In addition, the trial court rendered judgment in favor of Joshua, Inc., on its cross claim against Essex, awarding $19,000 in attorney fees for defense of the primary claim, $10,500 in expert witness fees and indemnity for settlement, and $7,500 in attorney fees for prosecution of the cross claim.
On appeal, Essex contends the trial court erred by finding a causal relationship between Mr. Franicevich's action and the plaintiff's injury despite the absence of any medical testimony. Essex also argues the trial court erred by finding that Essex breached its duty to defend its insured, Joshua, Inc., considering that the facts pled by the plaintiff established a battery and the issue of consent was not raised in the pleadings. In answer to the appeal, Mr. Sullivan contests the trial court's finding of comparative fault. We address each issue separately.

Causation
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the alleged injury by a preponderance of the evidence. Maranto v. Goodyear Tire and Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 759. Stated another way, the plaintiff must prove through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id. at p. 3, 650 So.2d at 759. Whether the plaintiff has met this burden of proving causation is a question of fact that should not be reversed on appeal in the absence of manifest error. Housley v. Cerise, 579 So.2d 973, 979 (La. 1991).
In the instant case, Essex contends that the trial court committed manifest error by finding causation in the absence of any medical evidence relating the slap on the back to Mr. Sullivan's ruptured spleen. There was no expert medical testimony introduced at the trial; the only witnesses were Mr. Sullivan and Mr. Franicevich. Mr. Sullivan testified that on July 23, 1999, he was sitting on a bar stool when his long time friend, Mr. Franicevich, came up behind him and slapped him on the back to say hello, or get his attention. Mr. Sullivan said Mr. Franicevich then sat down, they had a couple of drinks together and afterward Mr. Sullivan went home. Mr. Sullivan further testified that the next morning he experienced severe pain in his "lower area." According to Mr. Sullivan, that same day he was transported to the hospital by ambulance. Mr. Sullivan testified that when he arrived at the hospital, the emergency room doctor told him he had "a lot of infection in [his] body," but "he [the doctor] didn't know why."
The hospital records, which were stipulated into evidence, reflect that Mr. Sullivan was a thirty-three year old man, previously healthy, who was brought into the emergency room on July 25, 1999, complaining about pain in his abdomen that he had been experiencing since 9:00 that morning. The records further show that the patient had emergency surgery that *606 day to remove a ruptured spleen, but they do not contain any reference to the incident in the bar. Mr. Sullivan further testified that prior to this incident, he had never had any problems with his spleen, nor had he experienced any other recent trauma, such as an automobile accident. He said when Mr. Franicevich hit him on the back, it hurt, but he blew it off. Finally, he stated that it was common for he and Mr. Franicevich to greet each other with a slap on the back, punch in the arm or slap on the leg; thus, he was not offended when Mr. Franicevich did so in the bar, and he did not believe Mr. Franicevich intended to hurt him.
In his testimony, Mr. Franicevich admitted that he hit Mr. Sullivan on the back using a closed fist as a method of greeting him. He agreed with Mr. Sullivan that it was normal for the two friends to engage in this type of horseplay, that he did not intend to injure Mr. Sullivan, and that he used no more force than normal when he hit him.
The plaintiff argues that the trial court did not commit manifest error because the factual testimony created a legal presumption that his injury was caused by the incident in the bar, which presumption could be defeated only by a showing that some other incident could have caused the injury. See Maranto v. Goodyear Tire and Rubber Co., supra, at p. 6, 650 So.2d at 761 (citing Housley v. Cerise, supra, and Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986)). With regard to such a presumption, the Louisiana Supreme Court has stated:
[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Housley v. Cerise, supra, at 980 (citing Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977)). Alternatively, this court has recognized that a claimant's disability is also presumed if before the accident he was in good health but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves "in a situation where the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection." Connor v. Jones Bros. Enterprises, 606 So.2d 996, 1001 (La.App. 4th Cir.1992) (citing Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985)).
In the instant case, we find that the first presumption does not apply because there is no medical evidence whatsoever showing even a possibility of a causal connection between the incident in the bar and the plaintiff's ruptured spleen. Not only was there no evidence presented to show a causal connection between this particular incident and Mr. Sullivan's injury, there also was no evidence to suggest that a ruptured spleen is generally caused by trauma. The trial court, in its reasons for judgment, noted that the medical records were "neutral" on the issue of causation, and that based solely on the parties' testimony, the court determined that causation had been proven "by the barest of margins."
In order for us to find the trial court's determination to be free of manifest error, we must conclude that the alternative presumption discussed in Connor v. Jones Bros. Enterprises applies herein. Thus, we would have to conclude that, in the *607 instant case, the factual circumstances raise a "natural inference through human experience" of a causal connection between Mr. Franicevich's negligent action and Mr. Sullivan's ruptured spleen. However, considering the evidence in this case, we cannot so conclude.
Being hit on the back, particularly with the degree of force described by the two participants in this incident, is not in the normal course of human events generally recognized as an event that would cause serious injury to one's spleen. Moreover, there is evidence in the record that makes it even more difficult to infer a causal connection, such as Mr. Sullivan's testimony that when he arrived at the hospital, the emergency room physician told him he had a lot of infection in his body. This statement naturally raises questions as to the cause of the infection and whether the infection was causally related to the ruptured spleen, questions that remained unanswered by the end of trial. In addition, there is a discrepancy between Mr. Sullivan's testimony and the hospital records with regard to dates. Mr. Sullivan testified, and the pleadings reflect, that he was hit on the back on July 23; he began experiencing pain the next morning; and he went to the emergency room that same day. However, the hospital records show that Mr. Sullivan came into the emergency room on July 25, which is two days after the incident in the bar. This discrepancy was not addressed in the trial court's reasons for judgment, yet we believe it should not have been ignored under these circumstances, where the margin of proof of causation was admittedly so bare that the slightest evidence casting doubt on the plaintiff's testimony should have swung the balance the other way.
Considering the totality of the evidence, we conclude that no reasonable fact finder could have determined that the plaintiff met his burden of proving causation in the instant case. Therefore, we hold that the trial court erred manifestly by finding that the plaintiff's injuries were caused by the incident in the bar, and we reverse the trial court's finding in this regard. Having so concluded, it is unnecessary for us to consider the assignment of error concerning comparative fault.

DUTY TO DEFEND
The second issue we must address is whether the trial court erred by finding that Essex breached its duty to defend its insured, Joshua, Inc. Throughout this litigation, Essex contended that it had no duty to defend because the incident complained of constituted a battery, and therefore is excluded from coverage under Essex's policy by virtue of an "intentional act" exclusion and an "assault and battery" exclusion.
With regard to the duty to defend, the Louisiana Supreme Court has stated:
Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
Thus, if assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured.
*608 Yount v. Maisano, 627 So.2d 148, 153 (La. 1993) (Citations omitted).
For example, in Yount, wherein the insured repeatedly beat the plaintiff with both fists and kicked him in the face, causing broken facial bones, the Court found that the insurer had a duty to defend even though coverage under the policy was ultimately denied on account of an intentional injury exclusion. Thus, an insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore v. Masco Const. Co. Inc., 93-2064, pp. 8-9 (La.8/18/94), 643 So.2d 1213, 1218 (citing Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987)).
In the instant case, the plaintiff's initial petition, filed July 12, 2000, alleged that Mr. Franicevich, an employee of Joshua, Inc., struck the plaintiff with his fist without provocation while the plaintiff was an invited guest on property owned by Joshua, Inc. and/or Mr. Franicevich. The first amending petition, filed September 14, 2000, added an alternative allegation that Mr. Franicevich's act was one of negligence, which occurred during "horseplay." The second amending petition, filed April 16, 2001, added Essex as a named defendant and alleged that its policy, issued to Joshua, Inc., also covered employees, officers and directors of the insured. Essex then sent a letter to Joshua, Inc., refusing to defend based upon the two aforementioned exclusions in its policy, which prompted the other two defendants to file their cross claim against Essex in October of 2001 seeking their defense costs.
Considering the pleadings, we agree with the trial court that Essex had a duty to defend its insured against the instant claim. At least from the time the first amending petition was filed, there was an allegation that the plaintiff was struck during horseplay, which clearly indicates an unintentional injury. Essex, however, argues that the initial petition discloses only a battery, which is excluded under the policy, and that the "horseplay" allegation of the first amending petition should be disregarded because it is a conclusion of law rather than an allegation of fact. To support this argument, Essex cites Guidry v. Zeringue, 379 So.2d 813 (La.App. 4th Cir.1980), in which this court held that an insurer's obligation to defend is determined by reference to allegations of fact, rather than stated conclusions based upon those allegations, in the petition.
Although the principle announced in Guidry v. Zeringue is sound, that case is clearly factually distinguishable from the instant case. That case involved the allegation in the pleading that a particular automobile was covered under the insured's policy, which is clearly a conclusion of law. The instant case involves an allegation that Mr. Franicevich's actions were "actions of negligence ... which occurred during horseplay." Despite the inclusion of the word "negligence," we find that the quoted language is an allegation of fact. "Horseplay" is a factual term describing what allegedly occurred; it means "rough or boisterous play."[1] The use of that particular word suggests that serious injury was unintended and/or that the activity was consensual. Whether those allegations are ultimately proven to be true is not relevant to the determination of whether the insurer has a duty to defend.
We therefore hold that the trial court did not err by finding Essex liable for its failure to defend and by awarding to Joshua, Inc. the costs of defending the plaintiff's *609 action as well as the costs of prosecuting the cross claim. We note, however, that in addition to the expenses incurred by Joshua, Inc. in defending the suit, the trial court also awarded the sum of $10,000 as indemnity for the settlement amount paid by Joshua, Inc. and/or Mr. Franicevich to the plaintiff, Mr. Sullivan. Essex argues that this award should be reversed, citing Rovira v. LaGoDa, Inc., 551 So.2d 790 (La.App. 5th Cir.1989).
As a general rule, one seeking indemnity for a settlement must show actual liability to recover; however, where the claim is based upon a written contract, such as an insurance policy, the indemnitee need show only potential, rather than actual, liability on his part. Vaughn v. Franklin, 2000 0291, p. 10 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 87. Thus, we must determine whether Joshua, Inc. satisfied its burden of showing it was potentially liable for Mr. Sullivan's injury. In Rovira v. LaGoDa, Inc., supra, the case relied upon by Essex, the appellate court affirmed the trial court's refusal to award indemnification on the basis that the indemnitee did not introduce any evidence of its potential liability to the plaintiff at trial. In the instant case, however, the record clearly shows that counsel for Mr. Franicevich and counsel for Joshua, Inc., both took an active part in the trial, cross-examined witnesses, and also introduced evidence of their clients' potential liability to support their claim for indemnity. We therefore conclude the trial court did not err by awarding $10,000 as indemnification. 
CONCLUSION
For the reasons stated, we hold that the trial court's finding of causation is manifestly erroneous, and we therefore reverse the award of damages to the plaintiff. We also reverse the finding of comparative fault on the part of the plaintiff. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Webster's Third New International Dictionary 1093 (1971).